701 So.2d 570 (1997)
Veronica WIGGINS, Appellant/Petitioner,
v.
B & L SERVICES, INC. and Claims Control, Inc., Appellees/Respondents.
No. 97-1552.
District Court of Appeal of Florida, First District.
September 12, 1997.
Rehearing Denied November 24, 1997.
Melba J. Griffith, Ft. Lauderdale, and Randy D. Ellison, West Palm Beach, for Appellant/Petitioner.
Robert L. Teitler and Beth J. Leahy of Walton Lantaff Schroeder & Carson, Miami, for Appellees/Respondents.
PER CURIAM.
The claimant in a workers' compensation case seeks certiorari review of an order denying her motion for independent medical examinations (IME) at the expense of the employer/carrier (E/C). We deny the petition because it does not demonstrate that the judge of compensation claims (JCC) departed from the essential requirements of law.
The E/C accepted the claimant's 1996 motor vehicle accident as compensable and initially provided medical care and indemnity benefits, but controverted any indemnity claim after the first several weeks, asserting that the claimant had been released to light duty and the employer had work within her restrictions, but that she had not returned to work. They also controverted her claim for alternative orthopedic and chiropractic care, asserting that "this is a managed care arrangement and the clmt[claimant] has failed *571 to follow the formal grievance procedure."[1] The claimant then filed a motion seeking IMEs by Dr. Apotheker (chiropractor) and Dr. Lazar (orthopedist) at the expense of the E/C.[2] The E/C opposed the motion on the ground that these doctors were not within the managed care provider network.[3]
At the hearing on the motion, the parties agreed that the carrier had a certified managed care plan at the time of the accident and that neither Dr. Apotheker nor Dr. Lazar was a participating network provider in this plan. The claimant argued that she had a right to the independent medical examiner of her choice in each specialty, citing Reed v. Yvonne E. Reed, P.A./State Farm Fire & Casualty Ins. Co., 643 So.2d 1180 (Fla. 1st DCA 1994), and Adelman Steel Corp. v. Winter, 610 So.2d 494 (Fla. 1st DCA 1992), for the proposition that the IME physician is essentially the expert witness for the party choosing him/her and that to restrict that choice places undue limitation upon the party's right to choose its expert witness. The E/C argued that the claimant was not entitled to receive IMEs outside the managed care plan, and that the JCC did not have jurisdiction over the matter until the claimant had exhausted the grievance process.
The JCC ruled that when a managed care plan is in place, provision of medical services is governed by section 440.134. She construed this statute as requiring medical services to be provided by participating network providers and as prescribed in the managed care contract. Accordingly, she concluded, treatment outside the managed care arrangement is not compensable unless authorized by the carrier. She denied the claimant's motion, but stated: "Should claimant desire to proceed instead under Florida Statute 440.1925, the Court will entertain an additional *572 motion and hearing on that motion."[4]
Claimant asserts that this case presents an issue of first impression: whether the new "managed care" arrangement for delivery of medical services to injured workers limits a claimant's right to select and present independent medical witnesses (i.e., whether the JCC erred in her interpretation of the relevant statutes as limiting a claimant's choice of an IME physician to those within the carrier's managed care provider network). She argues that the exclusivity provision of subsection 440.134(16) is limited by its own terms to benefits provided under subsections 440.13(2)(a) and (b), necessarily excluding from the scope of managed care IMEs performed pursuant to subsection 440.13(5). The E/C argue that the managed care grievance provisions of 440.134(15) exclusively govern the provision of medical care and services.
In order to determine whether the JCC's denial of the request for IMEs constitutes a departure from the essential requirements of law, it is first necessary to determine whether the claimant's motion sought IMEs for the purpose of resolving a dispute regarding her entitlement to indemnity benefits, or for the purpose of resolving a dispute concerning the provision of medical treatment, care, or attendance. After considering the applicable statutes in pari materia, we conclude that denial of claimant's request was proper if the purpose of the IMEs was the resolution of a dispute regarding the provision of medical treatment, care, or attendance, but was improper if the purpose of the IMEs was to resolve a dispute regarding entitlement to indemnity benefits. In the latter case, denial of the request for IMEs would result in the E/C's controlling the selection of the claimant's expert medical witnesses, thereby denying her a meaningful opportunity to be heard, see Reed v. Yvonne E. Reed, P.A./State Farm Fire & Casualty Ins. Co., 643 So.2d 1180 (Fla. 1st DCA 1994), Ruiz v. Steiner, 599 So.2d 196 (Fla. 3d DCA 1992), and Travelers Indemnity Co. v. Hill, 388 So.2d 648 (Fla. 5th DCA 1980).
In construing legislation, we start with the assumption that the legislature did not intend by the enactment to violate constitutional safeguards. A straightforward reading of the statutes at issue indicates that the managed care provisions were intended to govern only the E/C's provision of "medically necessary remedial treatment, care, and attendance" under subsections 440.13(2)(a) and (b), and were not intended to govern the selection and use, in a dispute arising from the industrial accident, of medical expert witnesses pursuant to subsection 440.13(5). Under our interpretation of the statutes, if the claimant was requesting the IMEs to resolve a dispute regarding the medical treatment she was receiving for her work-related injury, the JCC's denial of her request was proper because section 440.134 and rule 4.028(5)(d) require the claimant, where medical treatment is at issue, to first exhaust the procedures provided in the carrier's managed care plan of operation.[5]
However, nothing in the petition filed in this court documents the specific basis of the claimant's request for independent medical examinations. Without that information, this court cannot determine that the JCC erred in her ruling. The petition is therefore DENIED, without prejudice to the claimant's right to renew her motion for an IME before *573 the JCC for purposes authorized by the statutes. The claimant's motion for appellate attorney fees is also DENIED.
KAHN and DAVIS, JJ., and SMITH, LARRY G., Senior Judge, concur.
NOTES
[1] Section 440.134, Florida Statutes (1995), sets out the provisions regarding "managed care arrangements." Subsection 440.134(15) requires grievance procedures for complaints from injured workers. Subsection 440.134(16) provides:

When a carrier enters into a managed care arrangement pursuant to this section the employees who are covered by the provisions of such arrangement shall be deemed to have received all the benefits to which they are entitled pursuant to s. 440.13(2)(a) and (b). In addition, the employer shall be deemed to have complied completely with the requirements of such provisions. The provisions governing managed care arrangements shall govern exclusively unless specifically stated otherwise in this section.
Subsection 440.134(17) provides:
Notwithstanding any other provisions of this chapter, when a carrier provides medical care through a workers' compensation managed care arrangement, pursuant to this section, those workers who are subject to the arrangement must receive medical services for work-related injuries and diseases as prescribed in the contract, provided the employer and carrier have provided notice to the employees of the arrangement in a manner approved by the agency. Treatment received outside the workers' compensation managed care arrangement is not compensable unless authorized by the carrier prior to the treatment date.
When medical treatment is provided through managed care and the petition for benefits includes a claim for medical care under subsections 440.13(2)(a) and (b), Florida Workers' Compensation Rule of Procedure 4.028(5)(d) requires the petition to include a certificate that the grievance procedures required by 440.134(15) were exhausted before the petition was filed under 440.192(3).
[2] Subsection 440.13(5), Florida Statutes (1995), provides that "[i]n any dispute concerning overutilization, medical benefits, compensability, or disability under this chapter, the carrier or the employee may select an independent medical examiner" to render an expert medical opinion upon an aspect of the employee's illness or injury which is material to the claim or petition for benefits and that this IME physician "may be a health care provider treating or providing other care to the employee." Subsection 440.13(1)(j) defines "independent medical examiner" as "a physician selected by either an employee or a carrier to render one or more independent medical examinations in connection with a dispute arising under this chapter." Subsection 440.13(1)(k) defines "independent medical examination" as "an objective evaluation of the injured employee's medical condition, including, but not limited to, impairment or work status, performed by a physician or an expert medical advisor at the request of a party, a judge of compensation claims, or the division to assist in the resolution of a dispute arising under this chapter." Subsection 440.13(5)(e) limits admissible medical opinions to those of the treating physician(s), the independent medical examiner(s), and a medical advisor appointed by the JCC.
[3] Neither the claimant's motion for IME nor the E/C's response was included in the appendix to the petition.
[4] Section 440.1925 provides a procedure for resolving maximum medical improvement (MMI) or permanent impairment (PI) disputes, and authorizes the employee or carrier to obtain one IME opinion on the issue of permanent impairment, notwithstanding the limitations on carrier IMEs in section 440.13. It also provides that a dispute as to MMI or PI "which is not subject to dispute resolution according to rules promulgated pursuant to s. 440.134 shall be resolved according to the procedures set out in this section."
[5] Under subsection 440.134(10)(c), the claimant may request an alternate chiropractor and orthopedist from the carrier's medical care coordinator, who would refer her to alternate physicians in each specialty within the plan's provider network. She may also obtain a second opinion in each specialty within the provider network, see subsection 440.134(6)(c)9. In either case, if she is not satisfied with the medical treatment provided by the E/C after she has exhausted the grievance process, she may then file a petition for medical benefits. At that point she may, under subsection 440.13(5), seek IMEs by physicians outside the managed care provider network, for the purpose of resolving the dispute regarding her medical treatment.