696 So.2d 873 (1997)
UNION CAMP CORPORATION and Liberty Mutual Insurance Company, Appellants,
v.
Charles D. HURST, Appellee.
No. 96-3089.
District Court of Appeal of Florida, First District.
June 2, 1997.
Rehearing Denied July 11, 1997.
*874 Nancy A. Lauten of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for Appellants.
Dean Burnetti, Lakeland; and Bill McCabe, Longwood, for Appellee.
PER CURIAM.
Union Camp Corporation and Liberty Mutual Insurance Company, the employer and carrier respectively (hereinafter collectively referred to as e/c), appeal a workers' compensation order awarding Charles Hurst, the claimant, temporary total disability benefits from August 11, 1994, through July 6, 1995; permanent total disability (PTD) benefits from July 6, 1995, through the date of the trial (May 2, 1996) and continuing; past and future palliative psychiatric care and treatment; past and future neurological care and treatment; interest and costs. Because we conclude that the Judge of Compensation Claims improperly admitted and relied upon the medical opinions of Dr. Barclay and Dr. Gonzalez, who were neither independent medical examiners, nor medical advisors appointed by the JCC, nor authorized treating physicians, and improperly based the award of permanent total disability upon pre-1994 law, we reverse.
Claimant had been employed as an industrial truck operator (forklift driver) since 1977. On August 11, 1994, he was driving a forklift when it was struck by another forklift truck. Claimant maintains he was injured as a result of that accident. He has not worked since August 17, 1994. Following the August 11, 1994, incident, he was referred by his employer to a company physician and was *875 also treated by several health care providers. He filed a request for assistance and e/c scheduled an independent medical evaluation (IME) with Robert Mozingo, M.D., a neurosurgeon. Dr. Mozingo found no evidence of any injury related to the accident of August 11, 1994, and opined that claimant had reached MMI with no impairments or restrictions as of the date of his evaluation, October 17, 1994. On February 3, 1995, e/c filed their first notice to controvert.
One month later, in March 1995, without having requested or received authorization from e/c, claimant was examined and evaluated by Dr. Arturo Gonzalez, a psychiatrist. Dr. Gonzalez diagnosed claimant's condition as "adjustment disorder with mixed emotional features, including depression and anxiety." Dr. Gonzalez found claimant's psychiatric condition to be causally related to both the industrial accident of August 11, 1994, and claimant's pre-existing back condition.
Without authorization from the e/c, claimant was examined and evaluated by Dr. Laurie Barclay, a neurologist, in July 1995. Dr. Barclay opined that claimant's conditions were causally related to the industrial accident. Claimant filed a petition for benefits on July 19, 1995, which was controverted by the e/c on July 26, 1995. Claimant was also evaluated on January 9, 1996, by Charles DeMinico, M.D., a board certified psychiatrist, in an independent psychiatric examination ordered by e/c. Dr. DeMinico found no neuropsychiatric disorder and further found that claimant's complaints were not causally related to his industrial accident.
A final hearing was held before Judge of Compensation Claims Charles Vocelle on May 2, 1996. Over objections by e/c that the medical testimony and records of claimant's treating physicians should not be admitted into evidence because claimant had not requested IMEs by those doctors and never sought authorization for their treatment of him, the JCC accepted and relied upon testimony from claimant's treating physicians, Dr. Barclay and Dr. Gonzalez. The JCC reasoned that because e/c knew of claimant's need for medical care and treatment and failed to provide the care, the JCC was entitled to admit the medical opinion testimony under section 440.13(5)(e), Florida Statutes (Supp.1994).
We agree with the e/c's argument that the JCC's findings and conclusions were erroneously based upon inadmissible medical opinions. The medical opinions admissible in a proceeding before a JCC are limited to the opinions of (1) a medical advisor appointed by the JCC or division; (2) an independent medical examiner; or (3) an authorized treating provider. See § 440.13(5)(e). In the present case, Drs. Gonzalez and Barclay did not fall into any of those categories. The claimant was under an affirmative obligation to request an IME under section 440.13(5)(a), Florida Statutes (Supp.1994), by the physician of his choice, if he objected to the e/c's decision to controvert his request for benefits based upon the opinions rendered in the independent medical evaluations obtained by e/c. See generally Rucker v. City of Ocala, 684 So.2d 836 (Fla. 1st DCA 1996)(claimant's due process rights not violated by statutory provision excluding testimony by unauthorized treating physicians, in part because claimant has the option of seeking a physician to perform an IME). The claimant was entitled to obtain such an IME at the expense of the e/c. Southern Bakeries v. Cooper, 659 So.2d 339, 341 (Fla. 1st DCA 1995).
Furthermore, the JCC's decision to award PTD benefits appears to have been based upon an analysis utilizing the law in existence before the 1994 amendments to Florida's Workers' Compensation Act. The substantive rights of the parties are fixed on the date of the claimant's accident and injury. See Sullivan v. Mayo, 121 So.2d 424 (Fla.1960). The claimant was injured on August 11, 1994, and therefore the JCC should have applied the criteria contained in section 440.15(1), Florida Statutes (Supp.1994). The final order states that claimant was unable to perform or maintain gainful employment on a "continual and interrupted basis" and was incapable of performing even light work on an uninterrupted basis due to a physical limitation. Under the law as amended in 1994, these findings are insufficient to establish PTD. Section 440.15(1)(b), Florida Statutes (Supp.1994), provides that "[o]nly a catastrophic injury as defined in s. 440.02 shall, *876 in the absence of conclusive proof of a substantial earning capacity, constitute permanent total disability."
Claimant has the burden of proving entitlement to PTD benefits. Vickers v. Emergency One, Inc., 680 So.2d 1076, 1077 (Fla. 1st DCA 1996); Wal-Mart Stores, Inc. v. Liggon, 668 So.2d 259, 264-265 (Fla. 1st DCA 1996). Neither the claimant nor the JCC addressed the catastrophic injury requirement. Even the medical testimony improperly admitted and relied upon by the JCC does not establish that claimant suffered a catastrophic injury as required by the 1994 law. The JCC simply "noted that the claimant has applied, qualified and presently receives social security disability benefits." While receipt of social security disability benefits may be relevant to a determination of entitlement to PTD benefits under the definition of catastrophic injury contained in section 440.02(34)(f), Florida Statutes (Supp. 1994), claimant's receipt of SSD benefits alone is not sufficient to qualify him for PTD benefits. The claimant must still prove every element of his claim, including the element of a causal connection between his compensable injury and the inability to earn which has entitled him to receive SSD benefits. Bob Wilson Dodge v. Mohammed, 692 So.2d 287 (Fla. 1st DCA 1997).
Accordingly, finding that the order on appeal is premised upon inadmissible testimony and an improper application of the law, we reverse and remand for further proceedings consistent with this opinion.
BARFIELD, C.J., and KAHN and DAVIS, JJ., concur.